~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH THE U.S. FEDERAL CLAIMS COURT PROTECTIVE ORDER~~

No. 06-498C
(Senior Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

MICRODYNE OUTSOURCING, INC., a subsidiary of L-3 COMMUNICATIONS CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DATATRAC INFORMATION SERVICES, INC., and LOCKHEED MARTIN ASPEN SYSTEMS CORPORATION,

Intervenors.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

STEVEN J. GILLINGHAM
Assistant Director

JOHN TODOR
Trial Attorney
Commercial Litigation Branch

Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2382
Fax: (202) 307-0972
Attorneys for Defendant

July 17, 2006

**TABLE OF CONTENTS**

I. This Case Should Be Decided Based Upon The Administrative Record . . . . . . . . . . . . 2

II. Microdyne Has Failed To Establish That Discovery Is Appropriate . . . . . . . . . . . . . . . . . 4

A. The Administrative Record Contains All Materials Required By This Court's Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. The Administrative Record Contains The Necessary Information For The Court To Determine Whether The Award Complied With APA Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C. Microdyne Has Not Established Any Basis For Discovery Regarding The Issue Of Possible Bias Based Solely Upon The Prior Employment Of An Advisor To The Technical Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beta Analytics Int'l, Inc. v. United States,
61 Fed. Cl. 223 (2004) . . . . . 10

C.A.C.I., Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) . . . . . 10

Camp v. Pitts,
411 U.S. 138 (1973) . . . . . 2

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) . . . . . 10

Doraiswamy v. Secretary of Labor,
555 F.2d 832 (D.C. Cir. 1976) . . . . . 3

Florida Power & Light v. Lorion,
470 U.S. 729 (1985) . . . . . 2

Four Points by Sheraton v. United States,
63 Fed. Cl. 341 (2005) . . . . . 10

Galen Medical Associates, Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) . . . . . 10

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . passim

Information Technology & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003) . . . . . 11

Liteky v. United States,
510 U.S. 540 (1994) . . . . . 11

Spezzaferro v. Fed. Aviation Admin.,
807 F.2d 169 (Fed. Cir.1986) . . . . . 11

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
435 U.S. 519 (1978) . . . . . 3

## FEDERAL STATUTES

5 U.S.C. §§ 702, 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1491(b)(1). Section 1491(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| MICRODYNE OUTSOURCING, INC., a subsidiary of L-3 COMMUNICATIONS CORPORATION, | ) | |
| Plaintiff, | ) | **AGREED-UPON REDACTED COPY MAY BE MADE PUBLIC** No. 06-498C (Senior Judge Hodges) |
| v. | ) | |
| THE UNITED STATES, | ) | ~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~ |
| Defendant, and | ) | |
| DATATRAC INFORMATION SERVICES, INC., and LOCKHEED MARTIN ASPEN SYSTEMS CORP., | ) | |
| Intervenors. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant, the United States, hereby submits its opposition to the motion to compel discovery and to supplement the administrative record filed by the plaintiff, Microdyne Outsourcing, Inc. ("Microdyne"). Microdyne seeks to overturn the contract awards made by United States Citizenship and Immigration Services ("USCIS"), part of the Department of Homeland Security ("DHS"), to intervenors, Datatrac Information Services, Inc. ("Datatrac") and Lockheed Martin Aspen Systems Corporation ("Aspen"). As set forth more fully below, the administrative record in this action provides a completely adequate basis upon which the Court may judge the award decision in this case and decide the merits of this protest. See Admin. Rec. (July 14, 2006) ("AR"). Because this case can be decided based solely upon the administrative record, discovery or supplementation of the record is not necessary, and Microdyne has failed to

meet its burden to establish that discovery is warranted. Moreover, to the extent that Microdyne's motion refers to the narrower administrative record from its previous protest with the Government Accountability Office ("GAO"), the administrative record filed with this Court contains numerous additional documents that contain the information required by this Court's rules. For these reasons, Microdyne's motion should be denied.[1]

## I. This Case Should Be Decided Based Upon The Administrative Record

The Court possesses jurisdiction to entertain this action pursuant to the bid protest jurisdiction of the Tucker Act, 28 U.S.C. § 1491(b)(1). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA").

It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action, but rather limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[2] In reviewing agency action pursuant to this deferential standard, "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court.'" Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

[1] ~~Pursuant to the Court's protective order, we have filed this document under seal, and have indicated protected material by highlighting the selected text within the document.~~

[2] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

Limiting judicial review of agency action to the administrative record reflects the ultimate standard of review under the APA, which presumes the validity of agency action and precludes the judiciary from substituting its judgment for that of the agencies entrusted by Congress to implement and administer various governmental programs. See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 557-558 (1978). "'To permit an administrative determination to be attacked or supported in court by new evidence,' the Supreme Court has admonished, 'would substitute the court [for] the administrative tribunal . . . .'" Doraiswamy v. Secretary of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976) (citation omitted).

Therefore, in determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) ("Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.") (citation and footnote omitted).

Although the court in Impresa allowed the taking of one limited deposition to obtain an explanation for the contracting officer's determination, it noted that "[t]his is a most unusual case." Id. at 1341. As the court expressly cautioned: "[W]e wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate." Id. at 1329. Emphasizing the point, the court further stated, "[W]e wish to emphasize that such discovery of the contracting

officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Id. at 1340-41.

## II. Microdyne Has Failed To Establish That Discovery Is Appropriate

This case does not present the special circumstances in Impresa, i.e., an explanation for the contracting officer's action was not apparent from the record. 238 F.3d at 1337. Nor does Microdyne allege as much. Rather, Microdyne seeks to explore the contracting officer's mental process, as well as unsupported allegations of bias. Moreover, the additional documents we have included in the administrative record regarding Datatrac and Aspen's proposals, as well as the evaluation of those proposals, provides a full explanation of USCIS's reasoning in making the contract awards. Accordingly, Microdyne has not satisfied its burden of establishing that supplementation of the administrative record is necessary or appropriate in this case.

### A. The Administrative Record Contains All Materials Required By This Court's Rules

Microdyne states that the record should, "at minimum, include all items contemplated by Paragraphs 22-23 of Appendix C of the Rules of the Court of Federal Claims." Pl. Mem. at 9. The record filed with this Court contains this information. Due to the Court's scheduling of Microdyne's motion to compel prior to our filing of the administrative record, Microdyne was not in a position to see the contents of the record filed with the Court, and based its argument upon the record previously filed with the GAO, which Microdyne attached to its complaint. By contrast, the record filed with this Court contains additional information not contained in the

GAO record, and satisfies the requirements in Appendix C of the Court's rules. The contracting officer for USCIS also has certified that the record is complete. See AR, USCIS Certification.

Specifically, our record with this Court contains the original GAO record (Tabs 1-26), and for the sake of completeness and context, the parties' GAO filings (Tabs 27-40). We have also included an additional draft business proposal evaluation (Tab 41), and additional correspondence between USCIS and those parties relating to the bids (Tabs 42-49). We have included the Datatrac proposal (Tabs 50-62), Aspen proposal (Tabs 63-97), and USCIS's technical evaluations of those proposals (Tabs 98-99).[3] To our knowledge, these additional materials were not included in the GAO record, because of a dispute regarding the scope of Microdyne's protest to GAO. In any event, the relevant inquiry is the contents of the record with this Court, not the GAO.

Although Microdyne concedes that it filed its motion prior to our production of the record, it also relies upon discussions between counsel for Microdyne and counsel for the Government concerning what should be in the administrative record. Pl. Mem. at 1, n. 1; Pl. Mem. at 9. However, these discussions were highly preliminary in nature. Moreover, although Microdyne states that the Department of Justice stated that it did not intend to include certain categories of information, Pl. Mem. at 9, in order to clarify the record, we are aware of no such statement. To the contrary, counsel for the Government conferred with counsel for Microdyne

---

[3] We note that USCIS's contracting officer, Ned Ross, decided not to forward [redacted] to the Technical Evaluation Committee. See AR, Tab 24. Nevertheless, in order to provide complete information in accordance with the Court's rules, we have included the entire bid package in the administrative record. We will follow up to clarify [redacted] the Technical Evaluation Committee with our motion for judgment on the administrative record.

after Microdyne filed its motion to discuss the items we would include in the administrative record. We informed Microdyne that we would include the items listed in Appendix C of the Court's rules, specifically the proposals and evaluations of Datatrac and Aspen's bids, as well as the additional correspondence.

Although counsel for Microdyne stated that they would need to see the record before reaching any conclusion, it appears that the additional materials we have submitted satisfy the eight specific categories of documents Microdyne lists in its discussion of the Appendix C requirements, e.g., correspondence between USCIS and the parties, USCIS's evaluation of the awardees' proposals, documents related to post-award debriefing. Pl. Mem. at 9. With the exception of a "competitive range determination," which USCIS did not perform for this procurement, the record includes this information. Therefore, no supplementation of the record is necessary, and it is possible that this issue may already be resolved.

**B. The Administrative Record Contains The Necessary Information For The Court To Determine Whether The Award Complied With APA Standards**

The administrative record filed with the Court provides the Court with the necessary information to determine whether USCIS's procurement decision complied with the standards set forth by the APA, and also contains the additional information requested by Microdyne to the extent it is relevant to those standards. The inclusion of the proposals and technical evaluations for Datatrac and Aspen's bids may make most, if not all, of Microdyne's additional requests moot. Even if Microdyne continues to request additional documents relating to these issues, a review of the documents shows that such a request would not be supported.

For example, Microdyne repeatedly asks why USCIS chose the "more costly proposals of Aspen and Datatrac [compared to] L-3/MOI" (Pl. Mem. at 6-9), arguing that, "[t]here is no way to ensure the accuracy or reasonableness of USCIS' interpretations of those proposals without seeing them." Pl. Mem. at 6. Now, however, the administrative record contains the proposals, as well as the technical evaluations and subsequent correspondence involving these parties. Therefore, the record contains the necessary information.

Microdyne also makes several specific claims with respect to the technical factors USCIS employed in making its decision, and its assessment of those factors. Pl. Mem. at 7-8. First, Microdyne alleges that certain of these factors constituted "abandonment of the industry best practice focus of the procurement," or "violated federal procurement laws," but does not state which factors or which laws it is discussing. Nevertheless, the administrative record does contain the agency's explanations, prepared at the time for its application of factors, and for its reasoning in weighing certain factors. To the extent Microdyne argues that USCIS's actions are arbitrary or capricious, it may do so in its motion for judgment on the administrative record, but the record filed with the Court contains the agency's decisions and reasoning with respect to the factors it employed.

Second, Microdyne states that, "[a]t the heart of a price/technical trade-off decision is a comparison of the value presented by each proposal. . . . This Court can only determine the contentions of L-3/MOI that USCIS' decision was irrational, unreasonable, and arbitrary and capricious by examining the documents and information that USCIS considered in reaching its decision." Pl. Mem. at 8. Again, the Datatrac and Aspen proposals and the technical evaluations of those proposals, all before the Court, give the Court the information that USCIS considered in

making this trade-off. Microdyne also states that, "[n]or should the Court go without the documents and testimony reflecting the mental impressions of USCIS and DHS decision-makers when they made their decisions." This, however, is not the function of the Court's review in a bid protest. As the Federal Circuit cautioned in Impresa, the Court should not "order[] a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate." Impresa, 238 F.3d at 1329.

Third, Microdyne raises issues relating to comparisons of technical factors among the Datatrac, Aspen and Microdyne proposals, which are cited in the Source Selection Decision Document. Pl. Mem. at 8-9; see AR, Tab 13. Again, the Datatrac and Aspen proposals and the technical evaluations of those proposals, all before the Court, enable the Court to fully examine these arguments. Furthermore, with respect to all of Microdyne's additional requests, because the record contains the information that USCIS used in making its decision, the proper response to any specific factor is not to add additional deposition testimony or documentation regarding mental processes, but simply to weigh the information in the record in order to determine whether the award decision complied with APA standards.

Fourth, Microdyne raises questions and seeks information relating to USCIS's consideration of its experience with Datatrac relating to the current overflow contract. Pl. Mem. at 12-13. USCIS considered its experience with Datatrac with respect to this overflow contract in evaluating Datatrac's technical capability. See AR, Tab 98. For the sake of clarification, the overflow contract is an entirely separate contract from the contract awarded in this case, covering calls in excess of those currently handled by the incumbent contractor; it was awarded essentially simultaneously with the solicitation for the contracts in this matter, and will expire upon the

commencement of the newly-awarded contracts. See AR, Tab 2 at 22-24; Tabs 9-10. Given that the record contains USCIS's consideration of this experience with Datatrac in its technical evaluation, Microdyne's broader request for "[a]ll documents regarding the Overflow Calls Contract awarded to Datatrac in 2005," Pl. Mem. Appendix A, ¶ A.2, is overbroad and unnecessary.

Microdyne also requests additional documentation regarding other factors cited in the Source Selection Document (Tab 13), including the occupancy rate and productivity rate analyses prepared by an advisor to the Technical Evaluation Committee, [redacted], and considered by USCIS, or call center staffing requirements. Pl. Mem. at 12-13. Because the administrative record now contains the proposals and technical evaluations, this factor should be satisfied. To the extent Microdyne states that more information should be provided regarding the mental processes used by the officers who made these technical decisions, such an inquiry is outside of the proper review in a bid protest. Impresa, 238 F.3d at 1329.

C. **Microdyne Has Not Established Any Basis For Discovery Regarding The Issue Of Possible Bias Based Solely Upon The Prior Employment Of An Advisor To The Technical Committee**

Microdyne requests additional documents and numerous depositions to explore the issue of possible bias regarding an advisor to the Technical Evaluation Committee, [redacted]. The sole basis alleged for this potential bias is Microdyne's assertion that, "the prior employment of [redacted] by both Apparent Awardees creates, at the very least, the appearance of a conflict of interest and therefore bias in favor of the Apparent Awardees." Pl. Mem. at 11. Solely based upon this allegation, Microdyne states that, "[d]epositions will be needed to supplement the administrative record and enable the Court to fully understand the

impact of [redacted] bias and conflict." Id. In fact, [redacted] informed USCIS of his prior employment, and, out of an abundance of caution, [redacted] and USCIS agreed that he would not serve on the Technical Evaluation Committee that weighed the competing bids. See AR, Tab 2 at 33-34, Tab 26 at 733-34. Instead, [redacted] served as an advisor to the committee, only providing information as requested by the members of the committee. Id.

In any event, Microdyne's complaint is nothing more than an attack upon the good faith of the awarding contracting officer. However, it is well-settled that Government contract officials are presumed to exercise their duties in good faith. See Galen Medical Associates, Inc. v. United States, 369 F.3d 1324, 1335 (Fed. Cir. 2004). Accordingly, a plaintiff seeking to supplement an administrative record must make "a strong showing of bad faith or improper behavior" to compel the testimony of such officials. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). Such a showing requires "hard facts," not inferences based upon "suspicion and innuendo." C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567, 1582 (Fed. Cir. 1983).

Indeed, Microdyne does not even allege that the record contains proof of this alleged bias. Rather, Microdyne alleges no basis for this allegation, other than [redacted] prior employment, and fails to cite any information demonstrating the existence of bias. Therefore, discovery or supplementation of the record, particularly the depositions of five officials at USCIS and DHS, is not appropriate. See, e.g., Four Points by Sheraton v. United States, 63 Fed. Cl. 341, 344-45 (2005) (requests for depositions in bid protest denied when there was "no alleged conduct which might indicate a motivation for bias on the part of the CO or the evaluators"); Beta Analytics Int'l, Inc. v. United States, 61 Fed. Cl. 223, 228 (2004) (discovery into allegation of conflict of

interest in bid protest denied when plaintiff "has failed to present any evidence suggesting that the agency's conflict of interest determination was arbitrary and capricious, and thus has not overcome the presumption of regularity").

Microdyne's allegation also raises questions concerning the contracting officer's reasoning and mental impressions. However, "discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's [decision]." Impresa, 238 F.3d at 1341. At bottom, lacking any basis for demonstrating that the contracting officer was biased in fact, Microdyne's complaint is simply an argument that the Government erred in evaluating the proposals. However, the decision itself either is supported by the record or it is not. In any event, such an argument "is not evidence of bias, and it is insufficient to overcome the presumption that the contracting officer acted in good faith." Information Technology & Applications Corp. v. United States, 316 F.3d 1312, 1323 n. 2 (Fed. Cir. 2003) (quoting Spezzaferro v. Fed. Aviation Admin., 807 F.2d 169, 173 (Fed. Cir.1986) (to overcome the presumption of good faith, "[t]he proof must be almost irrefragable") and Liteky v. United States, 510 U.S. 540 (1994) (holding that evidence of bias sufficient to require recusal of a judge must come from an extrajudicial source, rather than merely from unfavorable rulings)).

In addition to its unsupported request for depositions, Microdyne requests any additional documentation regarding "[redacted] interaction and relationships with the Apparent Awardees, including all communications among them, as well as documents relating to USCIS's awareness of [redacted] interaction and relationships with the Apparent Awardees and USCIS' decision-making process that led to [redacted] role during this procurement and the Overflow

Calls contract." Pl. Mem. at 11-12. After a further search for communications, we have found no communications involving [redacted] and either the awardees or the Technical Evaluation Committee in addition to those already presented as part of the GAO administrative record. Nevertheless, we have submitted all additional communications found after review of the file between USCIS and Datatrac and Aspen. See AR, Tabs 42-49. And, as previously discussed, insofar as the overflow contract experience is relevant to this award of this contract, this information already is contained in the record.

In addition to these requests, Microdyne's request for [redacted] personnel information, Pl. Mem. at 5-6, as well as its request for information regarding the Overflow Contract, are beyond the scope of this protest and are inappropriate.[4] Insofar as Microdyne

---

[4] Although we will address the substance of Microdyne's claims in our motion for judgment on the administrative record, we do wish to clarify certain inconsistencies in Microdyne's request for additional discovery with the actual process of the procurement. For example, Microdyne requests additional documentation relating to "[redacted] involvement with the decision to award his former employer and Apparent Awardee, Datatrac, a sole source contract for Overflow Calls that USCIS then relied upon as justification to prefer Datatrac over L-3 MOI." Pl. Mem. at 6. This is not an accurate description of the overflow contract or the reasoning in USCIS's technical evaluation of Datatrac's proposal (Tab 98). The overflow contract was not awarded to Datatrac, but to a joint venture between GWA and Datatrac, and was awarded contemporaneously with the issuance of the solicitation. See AR, Tab 2 at 22-24; Tabs 9-10. [redacted] also did not make the award decision for this contract.

Similarly, Datatrac requests information relating to "[redacted] derivation and application of a staffing model methodology that was the sole reason that DHS finally approved USCIS' award." Pl. Mem. at 6. Again, this description is incorrect. We presume that Microdyne is referring to [redacted] staffing analysis that he provided as advice to the technical evaluation committee to provide further explanation of the award after questions received from the DHS Office of Procurement Operations ("OPO"). See AR, Tab 26 at 1015-18. However, OPO did not need to "approve" the award; the Source Selection Authority (Michael Aytes) within USCIS made the award decision, not OPO. See AR, Tab 13. OPO's concurrence with the award decision, which was done as a matter of organizational accountability rather than a prerequisite to USCIS's making of the award, was based upon its review of all of the reasoning in the Source Selection Document, not "solely" [redacted] analysis. See AR, Tab 26 at 1040.

questions the substantive advice [redacted] provided to the Technical Evaluation Committee, such as the issues it raises with the "relative weighting of factors in the Solicitation," or "derivation and application of a staffing model methodology," Pl. Mem. at 6, the record already contains this information. Given both the lack of basis for Microdyne's allegation of bias and the completeness of the administrative record, no supplementation of the record is warranted.

## CONCLUSION

For these reasons, we respectfully request that Microdyne's motion be denied.

---

In response to Microdyne's request in the Appendix in its motion for "[redacted] role" in the analysis of "USCIS's cost/price realism or reasonableness analysis of L-3/MOI; Datatrac, and Aspen," Pl. Mem. App. A, ¶ A.6, we note that [redacted] prepared an occupancy rate and productivity rate analysis (Tab 26 at 1015-18), to measure the percentage of work time each employee would be handling calls. In fact, Microdyne's projected staffing levels were considerably lower than Datatrac's or Aspen's (a factor in the difference in price between the bids). The Source Selection Authority utilized this analysis, together with the Business Evaluation materials (Tabs 14-19) involving pricing data, in the best value analysis in the Source Selection Document (Tab 13 at 535-36). [redacted] also sent an independent government cost estimate (Tab 11), which does not appear to have affected Microdyne, inasmuch as it submitted a lower priced offer than the two awardees. In any event, these analyses are contained in the record and their value can be assessed by the Court.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/John J. Todor
JOHN J. TODOR
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C., 20530
Telephone: (202) 616-2382
Facsimile: (202) 307-0972

July 17, 2006

Attorneys for Defendant