Agreed-Upon ~~Proposed~~ Redacted Copy

# In the United States Court of Federal Claims

No. 06-498C
Filed: August 8, 2006
[FILED UNDER SEAL]

* * * * * * * * *

MICRODYNE OUTSOURCING, INC., a subsidiary of L-3 COMMUNICATIONS CORPORATION, *

Plaintiff, *

v. *

UNITED STATES OF AMERICA, *

Defendant, and *

DATATRAC INFORMATION SERVICES, INC., *

Defendant- Intervenor, and *

LOCKHEED MARTIN ASPEN SYSTEMS CORP., *

*

Defendant-Intervenor.

* * * * * * * * *

Bid Protest; Standing; "Interested Party"; RCFC 12(b)(6); Conflict of Interest

John H. Horne, Powell Goldstein LLP, Atlanta, GA, for plaintiff. Carl A. Gebo, Diane Festin LaRoss, Mark B. Carter, Christopher R. Jordan, W. Bruce Shirk, Kate Hamann, of counsel.

John J. Todor, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

Rand L. Allen, Wiley Rein & Fielding LLP, Washington, D.C., for defendant-intervenor Datatrac Information Services, Inc. Daniel P. Graham and Kevin J. Plummer, of counsel. Thomas L. McGovern III, Hogan & Hartson LLP, Washington, D.C., for defendant-intervenor Lockheed Martin Aspen Systems Corp. Michael D. McGill, of counsel.

# OPINION

**HODGES**, Judge.

Plaintiff Microdyne/L-3 bid in response to a Request for Proposals to staff the United States Citizenship and Immigration Services' National Customer Service Center. USCIS is a division of the Department of Homeland Security, and its Customer Service Center assists DHS in the administration of immigration laws by employing customer service representatives to answer callers' questions about U.S. immigration benefits. The Solicitation signaled that award would be made to an offeror or offerors who presented bids most advantageous to the Government. USCIS determined that the proposals of Lockheed Martin (Aspen) and Datatrac were the "best value" to the Government after conducting a price/technical trade-off among eligible bidders, and the agency awarded a contract to each. L-3 was third in line. After GAO dismissed its protest, plaintiff filed a Complaint in this court, asking that we set aside the award as arbitrary and capricious, or otherwise not in accordance with applicable procurement law. Apparent Awardees Aspen and Datatrac have intervened.

Intervenors filed a motion to dismiss plaintiff's Complaint on July 12, arguing that L-3 lacks standing to protest the award, or alternatively, that Count I, plaintiff's conflict of interest allegation, does not state a claim for which this court can grant relief. Plaintiff filed its opposition to intervenors' motions on July 19. Senior Judge Margolis, initially assigned to this protest, had limited all motions to opening briefs and responses. We had been unaware of this restriction, and we invited intervenors' reply, which they filed on July 25. Plaintiff has requested leave to file a supplemental brief as well. The Government has not joined in the motions to dismiss.

## BACKGROUND[1]

The United States Citizenship and Immigration Service (formerly the Immigration and Naturalization Service) administers this country's citizenship and immigration laws, and one of its roles is to provide customer service with respect to the benefits and procedures applicable to the administration and enforcement of those laws. The National Customer Service Center supports USCIS by providing nationwide assistance to customers who contact the agency by telephone with questions related to benefits or case processing. The Center is structured so that all calls are routed first to an automated system. If the system cannot answer a customer's question, the call is rerouted to a Tier 1 Call Center staffed with representatives who use scripted material to respond to general informational requests,

---

[1] We derive the facts in this Opinion from the parties' pleadings and the Administrative Record the Government filed on July 14. Citations to the Record are denoted "A.R."

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 3 of 10

process various service requests, and provide case status information. Calls are forwarded to a Tier 2 Center staffed by USCIS employees, if Tier 1 representatives cannot offer assistance.

USCIS issued its Request for Proposals on September 28, 2005, seeking offers for Tier 1 Call Center services. In this "best value" procurement, the agency would award the contract to the offeror(s) whose proposal conformed to the RFP's requirements and was considered the most advantageous to the Government after integrating Technical Capability, Past Performance and Price factors (in descending order of importance). The agency announced that the first two factors, when combined, would be given significantly more weight than the price. In evaluating proposals, USCIS would use a trade-off approach between price and non-price factors, so it could award the contract to a bidder other than the lowest price offeror or the highest technically rated proposal. The RFP signaled that the Government intended to award the contract without discussions but retained the right to conduct them later, if necessary.

The Solicitation notified potential offerors that the bid would be evaluated by a Technical Evaluation Committee (reviewing technical aspects of proposals), a Business Evaluation Committee (reviewing pricing and business plans of proposals), and advisors. The two Committees would submit their findings to the Source Selection Authority, who would review them and make the final source selection decision.

Two elements of the Solicitation are germane to this motion. The first is geographical. Offerors were to propose minimum staffing at call centers in a single Historically Underutilized Business (HUB) Zone. The Solicitation stated:

> The Contractor shall locate one of its call centers in a HUBZone area. The Contractor shall have a minimum of 250 [Customer Service Representatives] at its location within the HUBZone.
>
> If through contract performance and diminished call volume during the term of this contract the Contractor's total CSR staffing falls below 300 CSR's, it shall maintain a minimum of 80% of its total CSR complement at that location.
>
> The Contractor shall maintain a minimum of 2 call centers. No one site may have more than 80% of the Contract's total CSR staffing.

A.R. Tab 5, at 88. The second element relates to wages the bidders would pay their Customer Service Representatives. The Solicitation required that offerors' proposals comply with the Service Contract Act. 41 U.S.C. § 351; FAR 52.222-41. A.R. Tab 5, at 143. Bidders were to certify that they had adhered to the Act in pricing their proposals.

The Source Selection Authority issued a final decision on April 27, 2006, awarding

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 4 of 10

contracts to Aspen and Datatrac. Plaintiff's appeal to the GAO was dismissed on June 29 because plaintiff did not submit its comments on the agency report on time. Plaintiff then filed its protest here.

DISCUSSION

*Intervenors' Motion to Dismiss pursuant to Rule 12(b)(1)*

Plaintiff asked this court to enjoin the award of a government contract. We must first decide "the threshold jurisdictional question" of whether plaintiff has standing to maintain its protest here. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). "[A] lack of standing precludes a ruling on the merits." Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003). The party seeking to invoke federal jurisdiction bears the burden of proving it has standing to file its claims. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 748 (2006).

The Administrative Dispute Resolution Act of 1996 amended the Tucker Act to extend jurisdiction in the Court of Federal Claims over "interested part[ies'] objecti[ons] to a solicitation by a Federal Agency for bids of proposals for a proposed contract or to a proposed award or the award of a contract . . . ." Pub. L. No. 104-320, 110 Stat. 3870, 3874 (1996); 28 U.S.C. § 1491(b)(1). The Tucker Act itself does not define the term "interested party." The Federal Circuit, however, has decided that Congress intended to adopt the meaning of that term as used in the Competition in Contracting Act. See Am. Fed'n of Gov't Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Thus, an "interested bidder" with respect to a contract or solicitation is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." See 31 U.S.C. § 3551(2); 28 U.S.C. § 1491(b)(1). For a plaintiff's "direct economic interest" to be affected, it must show it would have been "a qualified bidder," Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370-71 (Fed. Cir. 2002), i.e., that it had a "substantial chance" of being awarded the contract. Id. The term "interested parties" excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for award. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001).

Intervenors argue plaintiff is not an "interested party" with standing to assert its protest. They contend plaintiff's bid was nonresponsive and it made a material misrepresentation in its proposal. Plaintiff's proposal was nonresponsive according to intervenors [redacted]

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 5 of 10

[redacted] According to intervenors, the SCA fringe benefits must be accounted for apart from salary and thus cannot be included in the proposed wage rate. [redacted] The Solicitation also requires that offerors' bids propose to staff at least eighty percent of its Customer Service Representatives at a single HUBZone location. According to intervenors, [redacted]

The alleged material misrepresentation [redacted] Material misrepresentations in a bid disqualify a bidder from competing for the contract award. See Northrup Grumman Corp. v. United States, 50 Fed. Cl. 443, 468 (2001). This court held in Northrup that

> A bidder to a government contract who makes material misstatements in its proposal taints the award to such a bidder. Misrepresentations in bid proposals prevent government officials from determining the best value to the government and retard the competitive bidding process. When a bidder is found to have misrepresented its ability to perform a contract, that bidder will lose its right to execute the solicited work or bid on the reprocurement of the contract.

Id. (citing Planning Research Corp. v. United States, 971 F.2d 736, 741 (Fed. Cir. 1992)).

The agency found [redacted] notwithstanding these purported deficiencies. A.R. Tab 25, at 723. USCIS was aware of the staffing proposal, and presumably other issues raised by intervenors. See A.R. Tab 15, at 565 [redacted] Intervenors' arguments require us to go behind USCIS's determination that plaintiff's proposal was responsive to the RFP. The Administrative Record contains substantial support for the conclusion that the agency considered plaintiff's offer complete.

---

[2] The relevant section of the Act provides:

> (c) Compensation. (1) Each service employee . . . shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract.

FAR 52.222-41(c).

The Technical and Business Evaluation Committees considered eight proposals, including plaintiff's. Neither Committee rejected plaintiff's proposal as non-responsive. The experience of [redacted] shows that the agency will act decisively when appropriate. The USCIS [redacted] A.R. Tab 13, at 529.

The Technical Evaluation Committee gave plaintiff's proposal an overall rating of [redacted] A.R. Tab 5, at 70. The TEC Report states in its narrative that [redacted] A.R. Tab 20, at 624.

The Business Evaluation Committee also thought plaintiff withstood a chance of receiving the contract. The Committee [redacted] It recommended that the SSA make his best value judgment by considering among [redacted] A.R. Tab 14, at 553. The BEC Report confirmed the Committee [redacted] A.R. Tab 15, at 557. In summary, the Report noted that [redacted] Id. at 558. With respect to L-3's evaluations, the Report stated that [redacted] Id. at 565. Importantly, no disqualification occurred on this basis. Rather, the agency specifically noted that [redacted] In any event, USCIS retained discretion to waive "informalities and minor irregularities in offers received," A.R. Tab 5, at 159, or to refuse to consider proposals for those reasons, noting "[t]he Government may reject any proposal that does not address the totality of the solicitation requirements, including the contract terms and conditions." Id. at 167. That the Agency did not reject L-3's proposal suggests plaintiff adequately "address[ed] the totality of the solicitation requirements."

Moreover, specific language from the Source Selection Decision Document confirms this result. For example, the Source Selection Authority wrote, [redacted] A.R. Tab 13, at 531. He also found [redacted] Id. at 533, and its proposal is [redacted] Id. USCIS's post-award debriefing of plaintiff included the following questions by L-3:

> Q: Did L-3 meet the minimum criteria in the RFP . . .?
> A: Yes, minimum criteria were met.

A.R. Tab 25, at 723.

Intervenors rely on United States v. Int'l Bus. Mach. (IBM) Corp., 892 F.2d 1006 (Fed. Cir. 1989), to argue this court must determine independently whether the proposal was responsive to the RFP, irrespective of USCIS's conclusive finding of compliance. They quoted the following language from the Federal Circuit in support:

> When responsiveness is an issue, it must be resolved before the board can proceed. If a bid is not responsive, the protestor has no more right to invoke the office of the board than the proverbial man on the street. A nonresponsive bidder is the epitome of one who lacks a direct economic interest. This is not a mere technicality; it is the predicate of the board's right to intervene in governmental procurements. A bidder's standing to protest a contract given to another cannot be divorced from the responsiveness of its offer.

Id. at 1012. We do not read IBM so broadly as intervenors would suggest. IBM was a sealed bid procurement in which the award went to the lowest priced bidder, who also happened to be the sole offeror that complied with an amendment to the original solicitation. The awardee appealed a decision against it by the General Services Board of Contract Appeals in favor of a protestor, arguing that the protestor lacked standing in part because its bid was non-responsive. The GSBCA had concluded the petitioner had standing because it "had participated in and expended resources in an effort to obtain this procurement, [thus] it had a direct economic interest in" the award. Id. at 1008. The Federal Circuit reversed the Board on the standing issue but did not make an independent determination as to responsiveness of the challenger's bid. Id. at 1012. Rather, it admonished the Board for assuming responsiveness when no one, including the procuring officials, had made a such a determination. Id.

In any event, we believe we have addressed the responsiveness issue adequately. This conclusion is entirely consistent with a ruling on a jurisdictional challenge brought on the same theory: that the plaintiff lacked standing because of an allegedly non-responsive proposal. See Galen Med. Assocs., Inc. v. United States, 56 Fed. Cl. 104 (2003), aff'd, 369 F.3d 1324 (Fed. Cir. 2004) . The court denied a motion to dismiss on the following bases:

> [Plaintiff's] proposals were evaluated on the merits by the [agency], not rejected as non-responsive. Though the evaluators reduced plaintiff's scores for lack of a viable site, there is no evidence that they found plaintiff's proposal technically unacceptable. In fact, plaintiff finished second to [awardee] after both evaluations. Plaintiff therefore had a substantial chance

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 8 of 10

> of receiving the award and a direct economic interest.

Id. at 108. (citation omitted) (emphasis in original).

L-3 has the burden of proving it had a substantial chance of receiving the contract to have jurisdiction to challenge the procurement's outcome. USCIS awarded the contract to two bidders without discussions. [redacted] We detect no evidence the agency considered any aspect of plaintiff's proposal non-responsive. The Federal Circuit has held:

> The Air Force's decision letter stated that [a]ll offerors provided proposals which met minimum contract requirements and all proposals were fundamentally sound. . . . Under these circumstances, [plaintiff] has established prejudice (and therefore standing), because it had greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest.

Info. Tech. & Applications Corp. (ITAC) v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (internal citation omitted). The agency's language in ITAC strongly resembles USCIS's conclusions as to L-3's proposal. Plaintiff had a substantial chance of receiving the award, giving it standing to bring its protest.

*Motion to Dismiss Count I of Plaintiff's Complaint Pursuant to RCFC 12(b)(6)*

Intervenors also have moved this court to dismiss Count I of plaintiff's Amended Complaint under Rule 12(b)(6). Dismissal under this Rule is appropriate when plaintiff "can prove no set of facts" that would entitle it to legal remedy. Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1131 (Fed. Cir. 1998). Our review is "based on the facts alleged in the Complaint." Client Network Servs., Inc. v. United States, 64 Fed. Cl. 784, 789 (2005). We accept all well-pled facts as true and draw all reasonable inferences in plaintiff's favor. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Rule 12(b)(6) commands this court dismiss at the outset claims "that are fatally flawed in their legal premises and destined to fail, . . .[thus] spar[ing] litigants the burdens of unnecessary'" further litigation on those claims. Maniere v. United States, 31 Fed. Cl. 410, 419 (1994) (quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir.1993)).

Plaintiff entitles Count I, "Conflict of Interest." Within this Count are the following assertions:

> [redacted] a former employee of the Apparent Awardees was associated with the technical evaluations of the proposals in this Procurement including the proposals submitted by his former employers creating, at a minimum, an

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 9 of 10

> apparent conflict of interest expressly prohibited by FAR 3.101-1.
>
> As the Apparent Awardees' former employee, [redacted] conduct in this Procurement was unlawful and unfairly favorable to the Apparent Awardees to the great detriment and prejudice to L-3/MOI.
>
> The conduct of [redacted] in this Procurement was unfairly biased in favor of his former employers.
>
> [redacted] participation in this Procurement undermined the integrity of the process as a whole, resulting in an unequal playing field for all bidders and clear prejudice to L-3/MOI. As a result, this Procurement was tainted and conducted in a manner that violated federal laws and regulations.

Am. Compl. ¶¶ 97-100.

We note as an initial matter that Count XI of plaintiff's Amended Complaint alleges that "[t]he conduct of [redacted] in this Procurement was unfairly and unreasonably biased in favor of his former employers . . ." and "USCIS' and [redacted] actions manifested favoritism . . . ." Am. Compl. ¶¶ 156-57. Because plaintiff's bias claim is pled separately, our issue is whether it has stated a conflict of interest claim for which we can grant relief.

The Federal Circuit has held that "[f]or even an appearance of a conflict of interest to exist, a government official must at least appear to have a stake in the outcome of government action influenced by that individual." Galen Med., 369 F.3d at 1336. Plaintiff's conflict of interest claim arises from its belief that USCIS official [redacted] involvement in the evaluations somehow tainted the procurement because he formerly was employed by the awardees. The pleadings show that [redacted] played a role in the procurement, and that he had a prior professional relationship with intervenors. Upon careful review, however, plaintiff has not identified or suggested any stake [redacted] had in the outcome of the awards.

The parties disagree whether FAR 3.101-1 provides a basis to sustain plaintiff's conflict of interest claim. Intervenors argue this provision is simply aspirational in nature. They liken it to a regulation the Claims Court relied upon in sustaining a protest subsequently overturned by the Federal Circuit. See CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983) ("This regulation merely provides general standards to guide Government employees in the performance of their duties. It does not create specific and precise standards, the violation of which would justify enjoining the Department from

Case 1:06-cv-00498-RHH Document 53-2 Filed 08/10/2006 Page 10 of 10

awarding the contract.").[3]

FAR 3.101-1 is expansive, if somewhat hortatory. However, assuming this regulation compels avoidance of a conflict of interest, or even the appearance of one, plaintiff has pled neither sufficiently. See Galen Med., 369 F.3d at 1336 (requiring plaintiff show a "potential symbiotic relationship" between evaluator and awardee to establish even the appearance of a conflict of interest). Had L-3 alleged any "potential symbiotic relationship" between intervenors and [redacted] perhaps we could offer plaintiff legal relief. Evidence of such a relationship would tend to show an agency official possessed an "interest[] adverse to those of Government" – the very underpinning of a conflict of interest in a government procurement scenario. Plaintiff, however, argues merely that "any interest – including bias or prejudice" suffices to form the basis of a conflict of interest claim. Bias or prejudice is a distinct cause of action. Plaintiff has asserted such a claim in Count XI, and it may offer arguments in support of that claim in its motion for judgment.

## CONCLUSION

Plaintiff's request for leave to file its supplemental reply brief is GRANTED. Intervenors' Motion to Dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to Dismiss Count I of Plaintiff's Amended Complaint for failure to state a claim for which this court may grant relief. The parties will identify for the court by August 11 the material subject to redaction.

SO ORDERED.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge

---

[3] The provision analyzed in CACI is similar to FAR 3.101-1. See 719 F.2d at 1581. Compare 5 C.F.R. § 735.201a (1982) (repealed) (This Office of Personnel Management regulation provides "employee[s] shall avoid any action, whether or not specifically prohibited by this subpart, which might result in or create the appearance of . . . (b) Giving preferential treatment to any person; . . . (d) Losing complete independence or impartiality; . . . or (f) Affecting adversely the confidence of the public in the integrity of the Government.") with 48 C.F.R. § 3.101-1 ("Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none. . . . The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships.").